**STATE FARM MUTUAL INSURANCE COMPANY, Appellant,**

v.

**FIREMAN'S FUND AMERICAN INSURANCE COMPANY and Roy Edward Fite, Appellees.**

Supreme Court of Kentucky.

April 22, 1977.

Woodson T. Wood, Fox, Wood & Wood, Maysville, for appellant.

Bernard J. Blau, Kaufmann, Johnson & Blau, Newport, for appellee Fireman's Fund American Ins. Co.

John H. Clarke, Jr., Clarke & Clarke, Maysville, for appellee Roy Edward Fite.

PALMORE, Justice.

State Farm Mutual Insurance Company (hereinafter State Farm) appeals from a judgment declaring invalid two provisions of its automobile liability insurance policy relating to the uninsured motorist coverage required by KRS 304.20–020. The questions are of first impression in this state.

The appellee Fite was injured while riding as a passenger in a truck owned and operated by his employer, Styleline Furniture Company (hereinafter Styleline). He was paid $4856.29 in workmen's compensation benefits by the appellee Fireman's Fund American Insurance Company (hereinafter Fireman's Fund), Styleline's compensation carrier. He also brought suit for common-law damages against an uninsured third-party tortfeasor whose negligence had caused the accident and against Styleline's automobile liability carrier, State Farm, under its uninsured motorist coverage. On State Farm's motion Fireman's Fund was made a third-party defendant and was required to assert its claim as Fite's subrogee.

The pertinent statutes in force at the time the facts giving rise to this controversy occurred were as follows:

KRS 304.20–020, a section of the Insurance Code applicable to casualty insurance contracts, prohibited the issuance or delivery of an automobile liability insurance policy in this state unless it provided coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury," etc. By reference to KRS 187.330(3) it required that the limits of such coverage be not less than $10,000 for injury to or death of one person and $20,000 for two or more persons.

KRS 342.055 [now KRS 342.700(1)], a section of the Workmen's Compensation Law, provided that whenever a compensable injury resulted from circumstances creating liability in some person other than the employer the injured employe could either claim workmen's compensation or sue the other person at common law, but could not have double recovery. The concluding sentence of this section provided for subrogation by operation of law, as follows: "If compensation is awarded under this chapter, either the employer or his insurance carrier, having paid the compensation or having be-

come liable therefor, may recover in his or its own name or that of the injured employe from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employe."

In conformity with the Insurance Code, "Coverage U" of State Farm's policy obligated the insurer to pay, within the minimum statutory limits, all sums the insured should become legally entitled to recover for personal injuries from the owner or operator of an uninsured automobile.

Under an "Exclusions" clause the policy provided that Coverage U would not apply "so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier," etc. We shall refer to this as the exclusion.

Under the "Limits of Liability" section of a "Conditions" clause the policy provided that any amount payable under Coverage U "shall be reduced by . . . the amount paid . . . and payable on account of such bodily injury under any workmen's compensation law, disabilities benefits law or any similar law." We shall refer to this as the offset condition.

■ The cases cited in Fireman's Fund's brief all deal with provisions similar to State Farm's offset condition. Decisions from other jurisdictions on that subject are collected and discussed in an annotation at 24 A.L.R.3d 1369. They go in all directions. Suffice it to say, however, that in our opinion the minimum coverage limits prescribed by KRS 304.20–020 and KRS 187.330(3) cannot be reduced by a condition requiring the amount of workmen's compensation to be offset against such amount as the injured party otherwise would be entitled to recover under the uninsured motorist coverage of an automobile liability policy. Cf. *Meridian Mutual Insurance Company v. Siddons, Ky.,* 451 S.W.2d 881 (1970).

■ The exclusion is a different matter. It does not affect the minimum coverage required by the insurance statutes, nor does it in any way diminish the compensation carrier's right of subrogation under KRS

342.055. The compensation carrier's right to pursue the third-party tortfeasor remains intact.

The trial court adjudged that both the exclusion and the offset condition were invalid and that to the extent of its compensation payments Fireman's Fund was entitled to reimbursement out of Fite's recovery against State Farm.

Under comparable statutes the Virginia Supreme Court of Appeals held a similar contractual exclusion valid on the theory that the compensation carrier's statutory right of subrogation is against the tortfeasor, not against the injured employe's automobile liability insurance carrier:

"It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, Aetna does not stand in the shoes of Washington, the uninsured motorist. Its policy does not insure Washington, the uninsured motorist. Its policy does not insure Washington against liability. It insures Mrs. Horne and others protected under the policy against inadequate compensation. Aetna's liability to its insured is contractual, even though it is based upon the contingency of a third party's tort liability, and Horne's employer, Superior, does not become a third party beneficiary under the insurance contract. In fact, the policy specifically provided that it was not to inure directly or indirectly to the benefit of any workmen's compensation carrier or self-insurer under the Act. Mrs. Horne chose to provide, at her own expense, additional protection under the uninsured motorist provision for herself and others protected thereby and not for Superior or its compensation carrier. Neither Superior nor its compensation carrier acquired any more rights under Mrs. Horne's automobile liability policy than they would have acquired under a policy issued the insured providing for health and accident benefits. Certainly the Workmen's Compensation Act does not contemplate that the employer can be subrogated to the rights of the insured in such a policy. . . . In the absence of a

statutory provision giving the employer or its compensation carrier a right of subrogation against an insurer of the employee under the uninsured motorist provision of a liability policy, such a right does not exist." *Horne v. Superior Life Ins. Co.,* 203 Va. 282, 123 S.E.2d 401, 404 (1962).

■ We find the logic of the *Horne* opinion irresistible, and Fireman's Fund cites no case to the contrary. It is to be borne in mind that an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms. In fact, we have held in a recent case, *Commercial Union Ins. Co. v. Delaney,* Ky., 550 S.W.2d 499 (decided February 18, 1977), that reasonable exclusions from uninsured motorist coverage do not violate the statute.

■ As we construe KRS 342.055, the subrogation statute, "the other person in whom legal liability for damages exists" quite clearly refers to the third-party tortfeasor who is liable at common law. A payment made in performance of a contractual obligation is not a payment of "damages." Hence the liability of an insurance company under its uninsured motorist coverage cannot be the "legal liability for damages" mentioned in KRS 342.055. Moreover, the satisfaction of an injured party's claim by his own insurance company under its uninsured motorist coverage does not inure to the benefit of the uninsured motorist. His liability is not extinguished, and it may be enforced by both the carrier which has paid workmen's compensation benefits and the carrier which has paid under the uninsured motorist coverage. As between these two subrogees, however, the compensation carrier has priority, because otherwise the automobile policy would indeed interfere with the rights given to the compensation carrier under KRS 342.055. Cf. *Horne v. Superior Life Ins. Co.,* 203 Va. 282, 123 S.E.2d 401, 405 (1962).

To hold that the contractual rights of an insured party under the uninsured motorist clause of an automobile liability insurance policy must inure to the benefit of a workmen's compensation carrier to the extent of compensation paid or payable to him would confer upon the compensation carrier an additional right which it does not have under the subrogation statute. The injured party, or the person under whose insurance policy he is defined as an "insured," has no obligation to his employer's compensation carrier to carry any automobile liability insurance whatever. In the absence, therefore, of a statute or agreement to the contrary, what can be the source of the compensation carrier's right to have the benefits of such insurance? The answer, we think, is that there is none.

Before this case was tried, and as an incident of his workmen's compensation settlement with Fireman's Fund, Fite executed an agreement subrogating Fireman's Fund to all of his claims "against any person or corporation liable for the loss" paid by Fireman's Fund. This agreement, which was pleaded by Fireman's Fund, specifically provided for payment to Fireman's Fund from the proceeds of any judgment obtained against the third-party tortfeasor "and State Farm Insurance Company," and it bound Fite not to make a settlement or give a release without the written consent of Fireman's Fund. Later, however, Fite settled his claim against State Farm and the third-party tortfeasor for $3,000, subject to an express provision saving the subrogation claim of Fireman's Fund.

The jury returned a verdict against the third-party tortfeasor in the sum of $6568.20 for Fite's personal injuries, $4856.24 of which was adjudged in favor of Fireman's Fund and the balance in favor of State Farm. State Farm also was adjudged liable to Fireman's Fund for the $4856.24, and for that reason the trial court did not determine whether Fireman's Fund could look to the $3,000 settlement paid by State Farm to Fite (which sum had been paid into court).

As we are reversing the $4856.24 judgment against State Farm, it will be necessary for the trial court to determine the effect of the subrogation agreement signed by Fite and the respective rights of the

parties with respect to the $3,000 settlement.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.